# KIRKLAND & ELLIS LLP



FILED
7/25/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

|  | 333 West Wolf Point Plaza |
|---|---|
| James F. Hurst, P.C. | Chicago, IL 60654 |
| To Call Writer Directly: | United States |
| +1 312 862 5230 | +1 312 862 2000 |
| james.hurst@kirkland.com | www.kirkland.com |

July 25, 2025

**VIA ELECTRONIC MAIL**

Re: *Diggs v. Abbott Laboratories, et al.*, Case No. 1:22-CV-05356

Dear Judge Pallmeyer:

This Court's questions have been answered. Dr. Spector has not disclosed any opinion relevant to the *Diggs* case. Abbott agrees with Plaintiff that "there is no evidence in the Digg's record to answer" the questions highlighted in this Court's order from this morning. (*See* Plaintiff's Letter at 2) This, Abbott believes, requires summary judgment. There is no basis to grant an indefinite delay of next week's hearings and the long-scheduled trial to give Dr. Spector yet another opportunity—after two expert reports and two depositions—to address an issue Plaintiff has been aware of for ***over a year and a half*** since this case was selected as one Plaintiffs' ***two*** bellwether selections in November 2023. Abbott vehemently opposes Plaintiff's request for an "immediate suspension of the schedule" to allow the PLC time to offer another expert opinion.

Plaintiff's letter begins with a strawman. Nobody is suggesting that Dr. Spector, as a general causation expert, was required to conduct a specific analysis for ***each*** of the "hundreds, if not thousands of gestational age and birth weight combinations" for all the "individual infants subsumed with this MDL." (Plaintiff's Letter at 1) But in order to testify in the *Diggs* case in particular—as he plans to do—he has to have an opinion that is ***relevant*** to infants like Kamari (the relevant population). 7/24/25 Order at 1, *Diggs* Dkt. 105 (excluding Mohr and Scheer as not relevant to this case); Fed. R. Evid. 702 (expert must have applied expertise "to the facts of the case"). "[W]hether an expert's approach lines up with the basic facts of the case goes to the relevance and admissibility of the testimony itself. Gatekeeping of this sort is properly left to the court." *Owens v. Auxilium Pharms., Inc.*, 895 F.3d 971, 973 (7th Cir. 2018).

Dr. Spector freely acknowledged that he didn't have "any data that really addresses" whether an association (much less causation) exists for the population of infants "above 32 weeks and above 2000 grams" and that he therefore "did not do that analysis." (Mot. to Exclude Ex. 1, 12/23/24 Spector Dep. at 345:14–345:24, 395:2-11) Particularly at this late stage, the Court should not allow Plaintiff a do-over with Dr. Spector, which would be both fundamentally unfair and futile.

When Dr. Spector issued his report ten months ago, Kamari was one of only ***four*** bellwether infants—not "hundreds" and not "thousands"—and thus Plaintiff knew any general causation opinion would have to be relevant to infants like Kamari. But his report offered no such relevant opinion. At his deposition ***seven months ago*** in December 2024, Defendants' counsel pressed Dr.

# KIRKLAND & ELLIS LLP

James F. Hurst, P.C.
To Call Writer Directly:
+1 312 862 5230
james.hurst@kirkland.com

333 West Wolf Point Plaza
Chicago, IL 60654
United States

+1 312 862 2000

www.kirkland.com

---

Spector on that failure, and he repeatedly conceded that in studies with infants born above 32 weeks and 2000 grams, "it does not seem that there was any significant difference in NEC rates." (*Id.* at 345:1-12) Nor did he even try to extrapolate from studies of smaller and more preterm infants: "I didn't do that analysis." (*Id*. at 395:2-11)

Shortly after the deposition, Dr. Spector issued a supplemental report. But again, despite trying to belatedly correct other deficiencies in his opinions, he did not either identify any applicable studies or try to extrapolate from the existing studies. On the contrary, Dr. Spector has already indicated that the "literature" does support any such extrapolation, underscoring that any extension would be futile:

> Q. And ***you don't know one way or the other whether your analysis in this case will translate to infants who are born above 2,000 grams and above 32 weeks*** gestational age because you just didn't do that analysis, correct?
>
> A. ***The literature wouldn't support that analysis***, but the degree of extrapolation from the available data depends on the degree of difference between the population you want to make a statement about and the population that was in the literature that I reported on.

(*Id.* at 394:12-25 (emphasis added; objection omitted)) Far from offering even the slightest hint that any such "extrapolation" is possible, Dr. Spector's studies demonstrate the opposite because **every one** of Dr. Spector's studies that included infants over 2000 grams and 32 weeks gestational age showed no association between formula and NEC. (Reply ISO Mot. to Exclude at 3-4) And, as Dr. Spector acknowledges, "there is no such thing as causation without association." (12/23/24 Spector Dep. 199:14-23)

Plaintiff also cites no authority for the bizarre proposition that MDL courts "routinely" allow new, untimely expert reports, much less only two weeks before trial. Plaintiff's citations are inapposite. In *In re* Zoloft, it does not appear that any trial was imminent, and the supplementation was allowed in part because there were new studies available that had not been available before—which Plaintiff does not argue here. 2015 WL 115486, at *1 (E.D. Pa. Jan. 7, 2015). In *Amorgianos v. Nat'l R.R. Passenger Corp.*, there doesn't appear to have been any trial set at all, and the court allowed an expert to supplement his report only because it seemed the flaw could be "corrected." 137 F. Supp. 2d 147, 175 (E.D.N.Y. 2001). Again, Dr. Spector's flaw cannot be corrected. (*See* Spector Dep. 395:19-20 ("[t]he literature wouldn't support that analysis")) And in *In re Lipitor*, while the court did allow a supplementation that had ripple effects for the rest of the schedule, there is no indication that any trial was imminent. 2015 WL 6941132, at *6 (D.S.C. Oct. 22, 2015).

# KIRKLAND & ELLIS LLP

333 West Wolf Point Plaza
Chicago, IL 60654
United States

James F. Hurst, P.C.
To Call Writer Directly:
+1 312 862 5230
james.hurst@kirkland.com

+1 312 862 2000

www.kirkland.com

In any event, unless the Court is prepared to exclude Dr. Spector and enter summary judgment in Abbott's favor before next week's hearings, the hearings should still proceed as scheduled. Abbott's motion presents multiple alternative grounds for summary judgment that are independent of general causation. A ruling in Abbott's favor on those grounds could well make it unnecessary to resolve the issues with Dr. Spector at all. For example:

1. As in *Mar*, Plaintiff cannot prove that a warning would have made a difference, which defeats her failure-to-warn claims as a matter of law.

2. The design defect claims fail under Maryland's comment k, as well as under its risk-utility and consumer-expectations tests.

3. Even apart from *general* causation, Plaintiff can't prove *specific* causation, because her expert Dr. Flanigan has not disclosed any opinion that would satisfy Maryland's "but for" test.

All these arguments are entirely independent of whether Plaintiff can rely on Dr. Spector to prove general causation.

The trial in this case is less than two weeks away, and there is no reason to delay the hearing on these other critical issues. Nor is there any reason to delay the hearing on the parties' motions *in limine*, several of which will have significant implications for how the parties frame their opening arguments. If the Court is not inclined to enter summary judgment in advance, Abbott respectfully requests that the hearings next week should proceed.

Very truly yours,

James F. Hurst