FILED
7/25/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT



444 Cedar Street, Suite 1800
St. Paul, MN 55101
T (800) 279-6386  F (612) 436-1801

johnsonbecker.com

July 25, 2025

RE:   *Diggs v. Abbott Laboratories, et al.,*
      Case No.: 1:22-cv-05356

Dear Judge Pallmeyer:

The PLC writes regarding the Court's Minute Order (ECF No. 107, PageID #21,705) requesting, "Dr. Spector be made available in person or by video to answer questions about these issues or otherwise explain how his report shows that his conclusions are applicable to infants with K.B.'s characteristics" *Id*. The PLC is prepared to make Dr. Spector available to testify. However, prior to doing so, seeks clarification of the Court's recent Minute Order.

The PLC engaged Dr. Spector as a general-causation expert. His charge was to determine whether formula can cause NEC in preterm infants, not whether it did cause NEC in a specific case. Because the PLC maintains it is not a prerequisite of general causation, it did not ask Dr. Spector to do an analysis of any particular infant or of all the myriad combinations of gestational age and birthweight across the infant plaintiffs in this MDL. Such case-specific analysis would require Dr. Spector's Report to opine in detail on the hundreds, if not thousands, of gestational age and birth weight combinations that apply to the individual infants subsumed within this MDL.

In its original motion to exclude Dr. Spector, Abbott argued that Dr. Spector's "failure" to stratify his analysis by gestational age (>32 weeks) and weight (>1,500 grams), rendered his opinion inadmissible. In its Order denying Abbott's motion, the Court described this argument as "groundless." ECF No. 646**.** The Court reached this conclusion, in part, recognizing that Dr. Spector's opinions applied to all preterm infants, which the AAP and WHO describe as <34 weeks and/or <2,500 grams.

Based on the Court's prior Order that seemed to endorse the PLC's course in asking Dr. Spector to reach general-causation conclusions about preterm infants, the PLC's response to Abbott's current argument in *Diggs* was predicated upon general epidemiological principals that the study of epidemiology relates to populations, as opposed to individuals. The PLC interprets the Court's Minute Order to signal a view that the epidemiological testimony in this MDL must anticipate the universe of all

combinations of gestational age and birth weight, as opposed to all preterm infants (*i.e.*, infants <34 weeks and/or <2,500 grams).

Assuming the PLC's interpretation is correct, one way to satisfy the Court's concern in any individual case is for an expert to extrapolate from the published literature to apply these data to a given case. ECF No. 107. As the questions the Court poses in its Minute Order suggests, there is no evidence in the Diggs record to answer those specific questions. If the Court views that issue as dispositive, and the PLC cannot supply such evidence, the likely outcome will be an Order granting Abbott's motion for summary judgment given Drs. Sucre and Flanigan rely on his analysis to reach their causation opinions. As such, there is no need for argument on the remaining Summary Judgment and R702 motions given the PLC's inability to prove extrapolation in the current record.

However, the PLC believes it can supply this information to the Court, but that doing so will require supplementation to Dr. Spector's Report. As such, to allow the PLC to complete the analysis the Court's question signal may be required, the PLC requests an immediate suspension of the schedule to address this issue as it relates specifically to *Diggs*. Because Dr. Spector was not asked to conduct such an analysis, no amount of testimony will answer the question the Court posed as it relates to *Diggs*. And because the PLC cannot supply an answer to that question, *all* of the remaining motions for Summary Judgment and to exclude Dr. Flannigan are effectively moot. Given the importance of this issue, coupled with the massive effort, cost, and time to assemble the lawyers and staff in Chicago next week and for trial (on both sides), the PLC asks the Court for an emergency hearing or conference call to discuss next steps. In the event the Court grants the PLC's request, the PLC intends to request a suspension of the entire schedule so that we can promptly supplement Dr. Spector's and/or other expert's reports to opine on the individual facts of any individual case -- including *Diggs* and future bellwether trials in this MDL.[1]

Prior to submitting this letter, the PLC conferred with Abbott regarding the hearings on July 28 and 30. Abbott is contemplating whether it agrees or not with the PLC's

---

[1] MDL Courts, along with state courts overseeing mass actions, routinely allow expert report supplementation of expert reports to address the type of issue this Court raised in its Minute Order. *See generally Amorgianos v. Nat'l R.R. Passenger Corp.*, 137 F. Supp. 2d 147, 175 (E.D.N.Y. 2001) (allowing expert to supplement report where flaw could be "corrected."); *In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*, MDL No. 2342, 2015 WL 115486, at *2 (E.D. Pa. Jan. 7, 2015) (noting supplementation in the context of an MDL did not prejudice the defendant); *In re Lipitor (Atorvastatin Calcium) Mktg.*, No. 2:14-MN-02502-RMG, 2015 WL 6941132, at *6 (D.S.C. Oct. 22, 2015) ("[T]he Court will allow supplemental reports offering opinions as to whether Lipitor causes diabetes at dosages of 10 mg, 20 mg, 40 mg, and 80 mg.").

2

position. Abbott indicated that it will oppose any effort to seek to supplement the Record.

Thank you for your consideration. Should you have any questions, please do not hesitate to contact me.

Sincerely,

Timothy Becker
Andrew Childers
Diandra Debrosse
Wendy Fleishman
Jose Rojas